UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br><br>GINA S. LARSON and<br>JESSIE L. LARSON,<br><br>        Debtors. | Case Number: 13-14443-13 |
| GINA S. LARSON and<br>JESSIE L. LARSON,<br><br>        Plaintiffs,<br><br>        v.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>        Defendant. | Adversary Number: 14-75 |

**<u>MEMORANDUM DECISION</u>**

The matter is before the Court at the request of both parties. The Plaintiffs filed this adversary proceeding seeking to avoid the second mortgage lien of Defendant Nationstar Mortgage LLC. The Defendant filed an answer and the parties filed a joint pretrial statement. Thereafter, the parties requested a briefing schedule and have stipulated to relevant facts.

The Plaintiffs are the debtors in a voluntary Chapter 13 proceeding. They are the owners of real property described as Lot 53, Grothenhuis Addition to the City of River Falls, Pierce County, Wisconsin, Tax Parcel 276-01139-0600.

Its address is commonly known as 1119 Broadway Street, River Falls, Wisconsin 54022. The real property is the primary residence of the Plaintiffs.

Wells Fargo Bank, N.A., holds a first mortgage against the real property in the approximate amount of $173,330.00. Plaintiffs allege the value of the real property is $161,000.00. While the Defendant does not admit this value, it concedes that the value "is less than the amount owed on the first mortgage." The Defendant holds a second mortgage on the real property. Based on the amount owed to Wells Fargo, Plaintiffs' valuation, and Defendant's concession there is no value in excess of the first mortgage, the second mortgage lien is wholly unsecured.

Section 506 of the Code determines the secured status of allowed claims. Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Section 506(a) essentially divides a creditor's claim into two portions: a secured claim for the amount of the value of the collateral, and an unsecured claim in the amount of the claim in excess of the value of the collateral. Section 506(d) provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

2

    (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

    (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322.

Nationstar argues that because it holds a mortgage on the real property, it must have a secured claim that is not subject to modification under section 1322(b). Nationstar posits that because the Supreme Court refused cramdown of a lien in a Chapter 7 proceeding where the lien exceeded the fair market value of the land, its lien must be considered an allowed secured claim that is not subject to cramdown. This argument relies on Nationstar's view of the decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992). *Dewsnup* involved a Chapter 7 debtor seeking to avoid a lien solely under 11 U.S.C. § 506(d). The *Dewsnup* Court specifically limited its holding to the facts before it, providing, "We . . . focus upon the case before us and allow other facts to await their legal resolution on another day." *Id.* at 416-17, 112 S. Ct. 773, 778. After considering the various opinions interpreting *Dewsnup*

3

and in accordance with the instruction in *Dewsnup* to confine its ruling to the facts before it, a narrow application of its effect is warranted.

Nationstar next posits that the decision in *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993), further supports the conclusion that its lien is not subject to cramdown. *Nobelman* was decided one year after *Dewsnup*. It addressed whether a Chapter 13 debtor could modify the unsecured portion of an undersecured claim secured by a residential mortgage. The Supreme Court held that a Chapter 13 debtor should look "to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Nobelman*, 508 U.S. at 328. The *Nobleman* court held a mortgage could not be bifurcated between secured and unsecured portions in order to strip off the unsecured portion in the case of a mortgage secured by the debtor's principal residence in a Chapter 13. *Id.* at 327. If the valuation established the claim had a secured component, then section 1322(b)(2) could not be used to modify the lien. *Id. Nobelman* did not address modifying a wholly unsecured lien claim under the provisions of section 1322(b)(2).

Nationstar's argument ignores the fact that in *Nobelman* there was some equity in the residence in excess of the superior mortgage. In substance, Nationstar argues that if there is a mortgage on the principal residence, that should be the end of the inquiry because the claim must be considered to be an allowed secured claim and, if so, it is secured by a security interest in the Plaintiffs' principal residence and thus falls within the anti-modification

4

provision of section 1322(b)(2). This argument ignores the definition of "allowed claim" contained in 11 U.S.C. § 502(a). That section provides that an "allowed claim" is one to which "a party in interest" does not object. Thus, an allowed secured claim would be a claim to which no objection has been raised or granted and that is secured by property of the estate. By filing this adversary proceeding, the Plaintiffs necessarily are objecting to the allowance of Nationstar's claim. As a result, section 506 provides a mechanism for challenging the extent of the claim's reach over property of the estate.

Based on *Nobelman*, the proper starting point for analysis on whether a lien may be stripped off is section 506(a). We must first determine whether there is any value securing the claim. *Id.* Here, Defendant concedes there is no value securing its claim. The Seventh Circuit has not yet addressed the issue of whether a wholly unsecured claim can be modified under section 1322(b)(2). However, the eight circuit courts that have addressed the question have all concluded that the anti-modification protections provided to secured creditors by 11 U.S.C. § 1322(b)(2) apply only when the creditor's lien actually has some value. In doing so, these cases draw a distinction between undersecured liens and liens without any value whatsoever. *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2d Cir. 2001); *Minnesota Hous. Fin. Agency v. Schmidt (In re Schmidt)*, 765 F.3d 877 (8th Cir. 2014). A wholly unsecured creditor does not hold a claim secured by a debtor's residence, so the anti-modification provisions do not apply. *Id.* at 882; *see also Lane v. Western Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002); *Branigan v. Davis*

5

*(In re Davis),* 716 F.3d 331 (4th Cir. 2013); *Zimmer v. PSB Lending Corp. (In re Zimmer),* 313 F.3d 1220 (9th Cir. 2002); *Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.3d 277 (5th Cir. 2000); *McDonald v. Master Fin., Inc. (In re McDonald),* 205 F.3d 606 (3d Cir. 2000).

Nationstar argues, however, that the recent Supreme Court decision in *Bank of Am., N.A. v. Caulkett,* __ U.S. __, 135 S. Ct. 1995, 192 L. Ed. 2d 52 (2015), also supports the proposition that the creditor's lien must remain regardless of whether or not there is any value in excess of the senior lien. The reliance on *Caulkett* is misplaced. *Caulkett* merely applied the interpretation of 11 U.S.C. § 502(d) in *Dewsnup* to underwater liens. The Supreme Court held in *Caulkett* that stripping a wholly underwater lien was not available in Chapter 7 because *Dewsnup* "defined the term 'secured claim' in § 506(d) to mean a claim supported by a security interest in property, regardless of whether the value of that property would be sufficient to cover the claim." *Caulkett,* 135 S. Ct. at 1999. This does not address the directive that in a Chapter 13, the debtor should look "to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Nobelman*, 508 U.S. at 328. If value under section 506(a) establishes that there is any component of the claim that is secured, the debtor may not use 11 U.S.C. § 1322(b)(2) to modify the lien. *Id.* at 331.

If there is meaning to this directive, then there must be a difference between a claim that has some secured value and one that is wholly

6

unsecured. *Lane,* 280 F.3d at 667. *Caulkett* specifically rejected applying the logic of *Nobelman* in the section 506(d) context. *Caulkett,* 135 S. Ct. at 2000. Having done so, there is no reason to believe the Supreme Court intended *Caulkett* to have any effect on *Nobelman* or the cases that have applied its holding.

Based on the foregoing, the Court concludes the Plaintiffs may use section 1322(b)(2) to modify a claim that has no secured component.

There are no material facts in dispute. The Plaintiffs may strip off the wholly unsecured junior lien of Nationstar pursuant to sections 506(a) and 1322(b)(2). However, the lien shall not be avoided until the Plaintiffs complete the Chapter 13 plan in its entirety. In the event the Chapter 13 is converted or dismissed prior to plan completion, the lienholder would continue to hold a valid and unavoided lien secured by the Plaintiffs' residential real property.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order and judgment consistent with this decision will be entered.

Dated: January 22, 2016.

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge